# IN THE OREGON TAX COURT
## REGULAR DIVISION

Kurt E. FREITAG,
and Rita H. Schaefer,
dba Quattuorceti Beach House,
*Plaintiffs,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant,*

*and*

LINCOLN COUNTY ASSESSOR,
*Intervenor.*

(TC 4717-19 & 4723)

Kurt E. Freitag, Plaintiff (taxpayer) argued the cause *pro se*.

Rochelle A. Nedeau, Assistant Attorney General, Department of Justice, Salem, filed the response for Defendant (the department).

Robert E. Bovett, Lincoln County Counsel, Newport, filed the response and argued the cause for Intervenor (the County).

Decision for Defendants rendered November 7, 2005. Supplemental Decision relating to award of attorney fees issued April 27, 2006. *See Freitag v. Dept. of Rev.*, 19 OTR 37 (2006).

**HENRY C. BREITHAUPT, Judge.**

## I. INTRODUCTION

These consolidated cases come before the court for decision after trial. Plaintiff Kurt E. Freitag (Freitag) represented Plaintiffs (taxpayers) *pro se*. Intervenor Lincoln County Assessor (the county) was represented by counsel. Defendant Department of Revenue (the department) tendered its defense to the county and did not appear at trial.

## II. FACTS

The trial in this matter included separate presentations related to the four above-entitled cases. The facts as to each of those cases are set out separately.

### A. *TC 4717*

Taxpayers own a vacation property in Lincoln County referred to as the Quattuorceti Beach House. For the 2003-04 property tax year, the county assigned a real market value of $280,000 to the Quattuorceti Beach House. Taxpayers assert that the Quattuorceti Beach House should be valued at no more than $180,000.

At trial, Freitag offered the county's appraisal exhibit and it was admitted into evidence. Freitag then examined the county's appraiser, Dan Christianson (Christianson). Freitag's examination focused on asserted inconsistencies and other asserted mistakes in the county's

appraisal. Freitag did not offer any other evidence as to the taxpayers' asserted value for the Quattuorceti Beach House.

At the close of taxpayers' case-in-chief, the county moved to dismiss pursuant to TCR 60. Having received no evidence as to taxpayers' asserted value, the court found that taxpayers' case-in-chief amounted to no more than an attack on the county's appraisal. The court notified the parties of that finding and granted the county's motion to dismiss. Thereafter, Freitag voiced his concern that he believed he had raised sufficient doubts as to the county's appraisal.

B. *TC 4718*

Taxpayers originally purchased the property at issue in TC 4718 as part of a larger parcel. Taxpayers later set out to develop two buildings on that property and to subdivide it into two smaller properties, one of which is the property at issue in this case.

Freitag again relied on the county's exhibits in presenting taxpayers' case-in-chief. Although Freitag examined Christianson as to many alleged errors or inconsistencies in the county's appraisal, his argument turned on the size of the property. The original county appraisal of the property at issue showed it as consisting of .96 acre. Of that, Christianson testified that the county's appraisal was based on a useable .4 acre.[1]

Indicating that he had learned from his tactics in presenting taxpayers' case-in-chief in TC 4717, Freitag testified on behalf of taxpayers. Freitag testified that the county had overstated the acreage by failing to account for the fact that the property had been subdivided. Based on that error, Freitag asserted that the county had overestimated the value of the underlying land by 100 percent. Using the county's estimation that the land value for the entire, pre-subdivided piece of property equaled $185,000, Freitag calculated a necessary reduction of approximately $90,000.

---

[1] In addition, the county's appraisal indicates that the useable portion of the land is an area 100 feet by 175 feet.

On cross-examination, Freitag testified that the land was approximately 100 feet by 150 feet, or, in his estimation, about one-third of an acre. Freitag did not offer any evidence to support taxpayers' asserted value and, instead, relied on the alleged mathematical error by the county as to the description of the size of the land parcel.

At the close of taxpayers' case-in-chief, the county again moved to dismiss. The court denied that motion, in part because Freitag had raised an issue as to the size of the land as valued in the county's appraisal. In its case-in-chief, the county focused on that issue. Christianson testified that the county had valued the land based on .4 acre useable, not based on .96 acre. Although Christianson conceded that he did not personally know the exact dimensions of the land at issue, he testified that .4 acre is close enough to the approximately .33 acre that Freitag conceded.

At the close of its case-in-chief, the county again moved to dismiss. The court again denied the motion and took the matter under advisement.

## C.  *TC 4719*

In this case, taxpayers dispute the value of 4.75 acres of land on which six residential living units were under construction for the 2003-04 property tax year. Freitag relied again on the county's documentary evidence; however, he also testified as to certain facts.

For a price of $600,000, taxpayers purchased land on which they planned to develop 23 residential living units. Of that purchase price, taxpayers made a down payment of $200,000 and committed to pay the seller $400,000 with interest due. Taxpayers began construction on six of the 23 units. As of January 1, 2003, taxpayers had spent approximately $885,000 on site improvements and on the construction of the six residential units. Freitag testified that he knew that figure because it was computed to comply with Internal Revenue Service (IRS) reporting requirements; however, he did not offer into evidence any supporting documentation. Freitag indicated that a portion of the initial $885,000 in construction costs was spent to cover infrastructure costs as to the entire 23-unit complex.

Freitag testified that taxpayers thereafter spent another $1.785 million, approximately, for a total cost of approximately $3.26 million to construct the six residential units. Those six units eventually sold for over $2 million. Again, Freitag did not provide any documentary or other evidentiary support for any of those values or figures.

## D. *TC 4723*

Taxpayers own in whole or in part three residential rental properties in Lincoln County. Used within those properties is certain personal property and that is at issue in this case. The county determined that the aggregate sum of that personal property was owned by taxpayers and taxed the value of that property in accordance with ORS 308.250(2).[2] Taxpayers appeal on two theories.

First, taxpayers dispute the county's valuation of the property at issue. In order to establish a value different than that of the county, Freitag offered the county's appraisal materials, cross-examined the county's appraiser, and testified as his understanding of the cost of the items at issue. Freitag did not offer any documentary evidence as to value.

Second, taxpayers assert that they own no more than $2,500 of the personal property at issue in this matter and that a partnership—in which they are partners—owns the remainder. Although at one point both parties referred to a document that purported to indicate a different owner as to a portion of the personal property, neither party submitted any documentary evidence establishing that anyone other than taxpayers own the property.

## III. ISSUES

A. In TC 4717, should the court have granted the county's motion to dismiss at trial?

B. In TC 4718, should the court reduce the value of the property at issue for the 2003-04 property tax year?

C. In TC 4719, should the court reduce the value of the property at issue for the 2003-04 property tax year?

---

[2] All references to Oregon Revised Statutes (ORS) are to the 2003 edition.

D.   In TC 4723, should the court reduce the value of the per-
sonal property at issue for the 2003-04 property tax year,
or should the court determine that taxpayers did not
own a portion of the personal property during that year?

## IV.  ANALYSIS

As noted above, the decision in these matters is
related to four cases consolidated for trial. Those cases are
taken in turn.

### A.  *TC 4717*

As discussed in detail above, at trial the county
moved to dismiss TC 4717 pursuant to TCR 60. Although this
court has not articulated a standard by which it will consider
such a motion—indeed, such motions generally occur orally
at trial and, therefore, likely would be dealt with outside the
context of a written decision—the trial in these matters pro-
vide the court an opportunity to enunciate the standard that
it applied in this case and that it will apply in future cases.

Traditionally, this court has allowed, or in certain
cases has requested, each side to put on its case-in-chief.
Thereafter the court would take all of the evidence and argu-
ment under advisement and, in due course, later would issue
a written opinion on the matters presented by the parties.
Recently, however, parties moving for directed verdict pur-
suant to TCR 60 have requested that the court test the suffi-
ciency of the nonmoving party's case during the course of the
trial.

A motion for dismissal at trial is made pursuant to
TCR 60. That rule is patterned after the ORCP 60, a rule
designed to govern when a court may remove an issue or mat-
ter from consideration by a jury—*i.e.*, a directed verdict. This
court does not have a jury and, therefore, TCR 60 has a
slightly different purpose: TCR 60 serves to allow the moving
party to request the court to rule from the bench on the record
at that time before the court. When the court evaluates a
motion made pursuant to TCR 60, however, it will do so in a
manner consistent with that taken by the state's other courts
that are subject to ORCP 60. In order to prevail on a motion
for directed verdict pursuant to TCR 60, the moving party

must demonstrate that the record contains no evidence to support the nonmoving party's claim or claims. *See Bolt v. Influence, Inc.*, 333 Or 572, 578, 43 P3d 425 (2002). The court will not weigh the evidence; rather, it will consider the entire record and afford the nonmoving party all reasonable inferences drawn therefrom, in the light most favorable to that party. *Id.* With that in mind, the court turns briefly to its determination, made from the bench, at trial.

■     As this court has recently stated, " 'it is not enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the RMV of their property.' " *Poddar v. Dept. of Rev.*, 18 OTR 324, 332 (Sept 1, 2005, as corrected Sept 22, 2005) (quoting *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002) (citation omitted)). Here Freitag merely asserted that the county made certain mistakes in its appraisal and did not offer any evidence as to value. On the state of that record, the court had no evidence in support of Freitag's position and, therefore, nothing on which to support any contrary conclusion or even any contrary inferences. Based on that record, the court ordered at trial that TC 4717 be dismissed pursuant to TCR 60.

## B.   *TC 4718*

In this case, taxpayers assert the value of the property for taxation purposes is $330,000. Although Freitag began the presentation of taxpayers' case-in-chief in much the same manner as he had in TC 4717—by attacking the county's appraisal—he thereafter altered his strategy because, in his words, he had learned from the lesson taught in that earlier case. In particular, Freitag testified on behalf of taxpayers and in so doing raised the central issue in this case: the value of the land (and not that of the improvements).

Freitag testified that the land at issue in TC 4718 was an approximately half-acre parcel, not the .96-acre referenced in the county's appraisal. Freitag then highlighted the fact that the county had valued the land at $185,000. In his estimation, therefore, the value of the property should be reduced by at least 50 percent (.96 acre divided by roughly .5 acre), or $92,500. In addition, Freitag testified as to several other asserted deficiencies in the county's appraisal.

At the close of taxpayers' case-in-chief, the county moved for dismissal pursuant to TCR 60. Although the portion of Freitag's testimony related to the other deficiencies was not supported by any evidence, and therefore subject to the same analysis quoted in the above discussion of TC 4717, Freitag had raised an apparently genuine issue as to the value of the land; *i.e.*, the alleged mathematical computation error. Moreover, the county was unable to displace the force of that testimony during taxpayers' case-in-chief through cross-examination of Freitag or otherwise. Thus, at the close of taxpayers' case-in-chief, the record contained some evidence that the county's appraisal had at least a mathematical error. On the basis of that evidence the court denied the county's motion. *See Bolt*, 333 Or at 578.[3]

In the presentation of its case-in-chief, however, the county rectified the apparent deficiency in the value of the land. Christianson testified that, although he indicated in the appraisal that the land was a .96-acre parcel, he had valued the land based on its effective area of 100 feet by 175 feet, or roughly .4 acre. Christiansen testified that he would not need to make any adjustments because the appraisal was based on .4 acre, and that size was not in dispute. Freitag had testified that the effective area measured 100 feet by approximately 150 feet.[4] Freitag conceded, however, that was his estimation based on the fact that those in his trade estimated 200 feet as approximately 70 to 75 paces and that the depth of the property was about 50 paces. Freitag did not offer any documentary evidence to support his estimation.

Based on the record developed at trial, the county argues that taxpayers did not carry their burden of proof necessary to establish a lower value for the property in the property tax year at issue. The court agrees. Taxpayers submitted no evidence from which the court could conclude that Christianson's measurement of the property's effective size

---

[3] For similar reasons, the court denied the county's TCR 60 motions in TC 4719 and TC 4723 at trial; therefore, the court has not mentioned those motions in its discussion of the facts of those cases, nor will the court address those motions in the analysis sections pertaining to those cases below.

[4] At 100 feet by 150 feet, Freitag estimated the property to equal .34 acre (15,000 square feet divided by 43,560 square feet (one acre)). As noted above, Christianson estimated the size of the property to equal .4 acre.

was incorrect. That coupled with the absence of any evidence of a contrary value or of the other asserted deficiencies in the county's appraisal, leads to the conclusion that taxpayers' case amounts to nothing more than an ineffectual attack on the county's appraisal. *See Poddar*, 18 OTR at 332 (Sept 1, 2005, as corrected Sept 22, 2005). The court concludes, therefore, that taxpayers have not met their burden of proof necessary to reduce the value of the property at issue for the 2003-04 property tax year.

## C. *TC 4719*

In this case, taxpayers assert in their Complaint that the value of the property at issue should be reduced from $709,820 to $433,236. In support of their asserted value, Freitag pursued two theories. Those are discussed in turn.

### 1. *Criticism of the County's Appraisal*

Freitag, through examination of Christianson and through his own testimony, attempted to cast doubt on the county's appraisal. Again, however, Freitag failed to offer any evidence in support of his criticisms of the county's approach. As stated above, without any evidence of a contrary value or of the other asserted deficiencies in the county's appraisal, taxpayers' case amounts to nothing more than an ineffectual attack on the county's appraisal. *See Poddar v. Dept. of* Rev., 18 OTR at 332 (Sept 1, 2005, as corrected Sept 22, 2005).

### 2. *Freitag's Theory*

Freitag offered a unique theory of property valuation. In its essence, Freitag's view is that the court should value the property based on the net present value of profit inherent in taxpayers' development project sited on that property. Freitag never clarified whether his approach was directed at the six partially completed living units or at the entire development project that was contained in the assessment. Freitag focused on the measuring date of January 1, 2003, for the 2003-04 property tax year. As of that date, Freitag would ignore the estimated total of approximately $1,485,000, determined from the asserted purchase price for the property plus the asserted $885,000 in construction costs. Instead, Freitag, using allegedly actual, but undocumented,

cost information for expenditures made after the measuring date, asserted that the value of the property is its eventual sales price of $2,000,000 minus the asserted future construction costs to ready the property for sale of $1,700,000, for a total future return of $300,000. Freitag testified that those numbers were for half of the property, so he would multiply that number by two, for a total of $600,000. Finally, he reduced that figure to present value at ten percent for one year, which, in his calculation, results in a net present value for the property of approximately $540,000.

Freitag's theory must fail for many reasons. First, Freitag offered no substantiation for any of his asserted cost estimates. Second, Freitag offered no legal or appraisal support, and, indeed, the court was unable to find any such support, for his theory. Third, many of Freitag's estimates do not mathematically compute, including the fact that his theory returns a property valuation in excess of $100,000 from the value claimed by taxpayers in their Complaint. Most importantly, Freitag appears to equate discounted future gain from sale of a portion of a development project with current value of the entire project. Although the income indicator of value makes such an equation in respect of future income from operations, Freitag did not rely on the future income of the property but rather on future sale prices.[5] Finally, Freitag's own testimony was inconsistent on so many points, it lacked credibility. Based on this record, therefore, Freitag has not presented evidence sufficient to allow the court to entertain his alternative theory of property valuation.

In summary, the court concludes that taxpayers have not met their burden of proof necessary to reduce the county's valuation of the property at issue for the 2003-04 property tax year.

## D. *TC-4723*

At issue in this matter is the valuation of certain personal property and whether taxpayers hold an interest in

---

[5] Taken to its logical extreme, Freitag's theory would value for property taxation purposes all recently sold "built out" property at a value of zero because the new owner of that property could not be expected to earn any additional amount of profit from a sale of the property. Freitag confuses property value and unrealized appreciation in property. The two are not necessarily related.

that property for personal property taxation purposes. The personal property at issue is located at more than one rental property owned in whole or in part by taxpayers. The county asserts that, for personal property taxation purposes, taxpayers hold sufficient title in the property that, when the value of the property is aggregated, its value is in excess of $12,500; therefore, the property is taxable according to ORS 308.250(2). Taxpayers contest the county's valuation generally. In addition, taxpayers contend that they own no more than $2,500 in personal property, and that a partnership, in which they are partners, holds title of the remainder of the personal property, which, in any event, is valued at no more than $12,500. Those issues are taken in turn.

### 1. *Personal Property Valuation*

Taxpayers assert that the personal property at issue in this matter has a value of no more than $12,500.[6] Again, however, taxpayers submitted no evidence as to value, other than testimony from Freitag. Without some substantiation for Freitag's testimony, the court cannot find in favor of taxpayers. As both divisions of this court have reiterated to taxpayers on many occasions, valuation requires substantiation. If taxpayers could provide even a single receipt that would support Freitag's testimony or theories, the court might be in a position to question the validity of the county's appraisal of value. Without such substantiation, however, the court must conclude that taxpayers have not met their burden of proof necessary to reduce the value of the personal property at issue for the 2003-04 property tax year.

### 2. *Separate Ownership*

Related to the above discussion, but conceptually distinct, is taxpayers' assertion that they own only a certain portion of the personal property at issue and that a partnership owns the remainder (regardless the value of that property). The purpose for that assertion, as Freitag openly

---

[6] That figure represents their assertion that they own certain personal property worth no more than $2,500 and a partnership, in which they are partners, owns certain personal property worth no more than $12,500. The court is merely adding those two figures together at this stage of the analysis and leaving the ownership issue for detailed discussion below.

acknowledged at trial, is to distribute the personal property in manner so as to avoid taxation under ORS 308.250(2).[7] The county responds with a number of different counter arguments. Of those arguments, the court need only address one because it is dispositive: taxpayers' failure to meet their burden of proof.

As has been belabored in this opinion, taxpayers are appealing a decision of a magistrate and have the burden of proof as to that appeal. ORS 305.427. The magistrate determined that taxpayers had not shown divided and separate ownership and counseled taxpayers as to their need to provide some documentary evidence to the contrary. To carry their burden of proof, taxpayers must offer some evidence as to ownership on which the court might find contrary to the county's position.

As both sides presented their cases-in-chief, some discussion was had as to the ownership issue. Indeed, at one point the county *itself* referred to a tax return document that may have referred to an owner different than taxpayers for at least a portion of the personal property at issue in this case. Neither party, however, offered that evidence and the court will not speculate as to what support, if any, that document might have given to taxpayers' claims.

In summary, the court concludes that taxpayers have not met their burden of proof necessary to either reduce the value of the personal property at issue or to establish that a portion of that personal property is owned by another taxpayer or taxpaying entity.

## V.   CONCLUSION

Based on the foregoing, the court concludes that taxpayers have not prevailed in any of these cases consolidated for trial. Now, therefore,

IT IS ORDERED that TC 4717 is dismissed;

---

[7] ORS 308.250(2) provides: "If the total assessed value of all taxable personal property required to be reported under ORS 308.290 in any county of any taxpayer is less than $12,500 in any assessment year, the county assessor shall cancel the ad valorem tax assessment for that year."

IT IS THE DECISION OF THE COURT that, in case TC 4718, taxpayers have not met their burden of proof necessary to reduce the value of the property at issue for the 2003-04 property tax year;

IT IS FURTHER DECIDED that, in case TC 4719, taxpayers have not met their burden of proof necessary to reduce the value of the property at issue for the 2003-04 property tax year; and

IT IS FURTHER DECIDED that, in case TC 4723, taxpayers have not met their burden of proof necessary to reduce the value of the personal property at issue for the 2003-04 property tax year, nor have they established that they do not own that property for purposes of personal property taxation pursuant to ORS 308.250(2).