IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

RALPH L. CRAWFORD,                    )
                                       )
              Plaintiff,               )    TC-MD 110434N
                                       )
       v.                              )
                                       )
DOUGLAS COUNTY ASSESSOR,               )
                                       )
              Defendant.               )    **DECISION**

Plaintiff appealed the exception value and maximum assessed value of property identified as Account R44324 (subject property) for the 2010-11 tax year. A telephone trial was held on November 2, 2011. Plaintiff appeared and testified on his own behalf. Paul E. Meyer, Douglas County Counsel, appeared on behalf of Defendant. Frederick Ken Vedder (Vedder), Registered Property Appraiser II, testified on behalf of Defendant. Plaintiff's Exhibits 1 through 7 were received without objection. Plaintiff's Exhibits 8 and 9 were not admitted because they were not timely exchanged under Tax Court Rule-Magistrate Division (TCR-MD) 10. Defendant's Exhibit A was admitted without objection. Defendant's Exhibits B and C were offered, but were subsequently withdrawn when Plaintiff's Exhibits 8 and 9 were not admitted.

After Plaintiff had finished his testimony and presentation of evidence, Defendant made a verbal motion to dismiss, arguing that Plaintiff failed to provide any evidence as to the 2010-11 exception value of the subject property. Defendant cited *Hoxie v. Dept. of Rev.*, 15 OTR 322 (2001), arguing that exception value is measured by the change in real market value as a result of new property or new additions to property. Defendant stated that Plaintiff's only evidence consists of information related to his actual cost, but that cost is not equal to value. Plaintiff's

/ / /

response to Defendant's motion to dismiss included testimony not previously provided. That testimony is stricken, as requested by Defendant.

The court verbally denied Defendant's motion to dismiss under TCR 60 and the standard provided in prior cases decided by this court.[1] TCR 60 addresses a motion for dismissal at trial. In order to prevail under TCR 60, "the moving party must demonstrate that the record contains no evidence to support the nonmoving party's claim or claims. The court will not weigh the evidence; rather, it will consider the entire record and afford the nonmoving party all reasonable inferences drawn therefrom, in the light most favorable to that party." *Freitag v. Dept. of Rev.*, 18 OTR 368, 373-74 (2005) (citations omitted). This issue presented in this matter is the real market value of certain improvements to the subject property, added to the 2010-11 roll as exception value. There are three methods of valuation that are used to determine real market value: (1) the cost approach, (2) the sales comparison approach, and (3) the income approach. *Allen v. Dept of Rev.*, 17 OTR 248, 252 (2003); *see also* OAR 150-308.205-(A)(2)(a). Thus, evidence of cost is relevant to the question of real market value. Whether Plaintiff's cost information is persuasive evidence of the real market value is a question of fact that requires the court to weigh the evidence presented.

## I.  STATEMENT OF FACTS

Plaintiff appealed from a board of property tax appeals (BOPTA) order stating a 2010-11 real market value of $120,000, a 2010-11 assessed value of $60,206, and 2010-11 exception value of $27,904. (Ptf's Compl at 2.) Plaintiff appeals the 2010-11 exception value and requests that the 2010-11 maximum assessed value be determined "in accordance with

---

[1] TCR 60 is made applicable through the Preface to the Magistrate Division rules, which states in pertinent part that, "[i]f circumstances arise that are not covered by a Magistrate Division rule, rules of the Regular Division of the Tax Court may be used as a guide to the extent relevant."

OAR 150-308.149(6); ORS 408.149(6)." (*Id.* at 1.) Defendant requests that the values stated on the BOPTA order be sustained.

Plaintiff testified that he purchased the subject property in 1999. He provided the following description of the subject property at the time of his purchase in 1999: "When I bought the property in 1999 it had three tiny dwellings. The oldest (560 sq ft) dwelling's age is unknown. The two other dwellings (440 sq ft and 240 sq ft) were built in 1940." (Ptf's Ltr, Oct 21, 2011 (internal citations omitted).) Plaintiff stated that, in December 2009, he "disconnect[ed] one dwelling from the water and septic systems and [] remov[ed] the kitchens from both dwellings[]" in order to "avoid large fines" from Douglas County. (*Id.*) "Today, the property has the one old dwelling of 560 sq ft and two accessory buildings." (*Id.*)

Plaintiff testified that, in February 2001, he applied for and received a loan of $7,500 for "repairs" from the US Department of Agriculture (USDA).[2] (*See* Ptf's Ex 4.) He testified that he used the USDA loan to make improvements to the subject property. Plaintiff testified concerning the actual costs and completion dates of his remodel work on the subject property. Additionally, he provided check registers from "5/25/2001 – 5/18/2005," a "summary of building material expenses" from "2001-2005," and statements from "Western Cascade Federal C.U." dated "09/30/2001," "10/31/2001," and "11/30/2001." (*See* Ptf's Ex 4 at 4, Ex 5[3], 6, 7.) He testified that he purchased materials at "used building outlets" whenever possible, including counters, toilets, tubs, and lavatories. Plaintiff reported total costs of $7,300, including $500 for a "well system repair" $2,000 and $3,000 ($5,000 total) for "homestead house repair," and $1800 for "install septic system." (Ptf's Ex 4 at 4.)

---

[2] Plaintiff testified that, of the $7,500 loan, $7,440 was for repairs and $60 was for county recording fees. (*See* Ptf's Ex 4 at 2.)

[3] Plaintiff testified that Exhibit 5 is his check register; he testified that some entries have been "penciled over" because the copy was bad; they were not changed.

Plaintiff testified that he began working on the subject property on August 3, 2001. (*See* Ptf's Ex 5 at 2 (check register entry states "USDA 1st payment $34^{50}$").) Plaintiff testified that, in 2001, his purchases included rock and concrete for the foundation, electrical and plumbing supplies, lumber, cedar siding, windows, plywood, and a stove; he also paid $500 in "wages" to his "helper, PJ." (*See id.* at 2-6 (check register from 2001).) He testified in a similar manner with respect to 2002, 2003, 2004, and 2005, identifying entries in his check register pertaining to costs incurred for his work on the subject property. (*See id.* at 9-33 (check registers from 2002 through 2005).) Plaintiff testified that he "must [have been] getting into drywall or insulation," identifying several check register entries dated in April 2003, stating "VISA-Longs." (*Id.* at 16.[4]) He identified check register entries dated in September and October 2003, stating "VISA USDA drywall $95^{00}$" and "BIAS $101^{70}$," and testified that those entries reflect expenditures related to the drywall. (*See id.* at 18, 19.) Plaintiff testified that he paid "Daniel T" for "insulation" on December 10, 2003, noting that insulation would have been installed right before drywall. (*See id.* at 20.) Plaintiff testified that he began painting in November 2004, and identified check register entries dated November 20, 2004, and December 3, 2004, both stating "VISA Lowe's paint." (*Id.* at 27, 28.) He testified that, on January 10, 2005, he "ran out of money" and borrowed $1,000 to complete the work. (*See id.* at 29 (check register entry stating "(Line of Credit 8%) $1000^{00}$").) Plaintiff testified that he purchased carpets on April 23, 2005, and then moved in. (*See id.* at 33 (check register entry stating "carpet warehouse $568^{00}$").)

Plaintiff testified that, based on his check registers, he created a "Summary of Building Material expenses" allocated to "tax years" 2001-02 through 2005-06. (*See* Ptf's Ex 6.) He reported the following total expenses: $5,294.38 between "7/1/2001" and "6/30/2002," $466.07

---

[4] Plaintiff's Exhibit 5 contains two consecutive pages marked as "Ex 5-16." This citation refers to the first of the two.

between "7/1/2002" and "6/30/2003," $1,321.50 between "7/1/2003" and "6/30/2004," and $1,902.33 between "7/1/2004" and "6/30/2005," for a total of $8,984.28 from 2001 through 2005. (*Id.*) Plaintiff testified that his cost summary does not include the value of his labor. He testified that his work on the subject property between July 1, 2002, and June 30, 2003, was less than the previous year because he was working part time.

The parties dispute the quality of the subject property following Plaintiff's remodel work. Defendant noted language in Plaintiff's letter to the USDA Rural Development that Plaintiff plans "to turn a homestead house built in 1899 into a modern efficient living unit" and that it will be a "reliable, safe comfortable living unit" upon completion. (Ptf's Ex 4 at 3.) Plaintiff testified in response that he "did not build the house like people build new houses"; rather, he was "only trying to get 20 years out of the house" and provide a place to live for the duration of his life. Plaintiff testified that the subject property "looks like" a modern, efficient living unit, but is really "crooked, saggy old house." Plaintiff reiterated his testimony that he purchased used or damaged products whenever possible and relied primarily on his own labor. He testified that "60 percent" of the subject property is substandard construction quality.

Plaintiff testified that the subject property is insured through Farmers, although there were some discrepancies in Plaintiff's testimony concerning when it was first insured. He testified that the subject property was not insured through Farmers before 2007. Plaintiff testified that he had insurance prior to completing work on the subject property. Defendant referred to an entry in Plaintiff's check register from March 30, 2003, stating "American Family Insur. new House Insurance $10^{20}$" (Ptf's Ex 5 at 15; *see also* Ptf's Ex 5 at 25 (register entry from August 5, 2004, stating "Ron Rathert House Insurance $286^{00}$").) Plaintiff testified in response that that insurance was of a lower quality than Farmers.

Vedder testified that he inspected the subject property, including an interior inspection, during which he took measurements and Plaintiff "held the tape measure." He testified that he believes his measurements to be correct. (*See* Def's Ex A at 12.) Vedder reported that the subject property was last inspected by an appraiser for Defendant in 2000 following Plaintiff's purchase. (*Id.* at 1.) He described the "Subject Construction Discovery History":

> "In 2009, a Planning Department zoning clearance worksheet was taken out. This action flagged an inspection resulting for the January 1, 2010 assessment date. Discovered was the remodel of the improvement referred to as 'I-2.' * * * Although the plaintiff claims the remodel of the residence he lives in was completed over several years, the Building Department has no record of any permits being taken out for this property. Since aerials for this rural area were inconclusive, the exception value was added for 1-1-10."

(*Id.*) Vedder provided his calculation of the $27,904 exception value, as allocated to each component: $20,112 for the "I-2 House," $4,617 for the "I-2 ATTF," $553 for the "I-2 concrete," $2,363 for the "I-2 GPS-shed," and $259 for the "lean-to." (*Id.* at 8.) He testified that the "I-2 House" was previously on the tax roll at a value of $500 because it was a shed. Vedder testified that, to determine the value of the subject property improvements, he used a value of $35.82 per square foot for the main level and $17.62 for the attic, based on the Department of Revenue 1993 Residential Cost Factor Book for "Class 2 Single Family Residential."[5] (*See id.* at 9-11 ("TSG Computer Generated Improvement Screens" and Cost Factor book).) Vedder testified that the 2010-11 maximum assessed value of the subject property represented an increase in excess of three percent due to the 2010-11 exception value. (*See id.* at 19.)

Plaintiff testified that he found numerous errors in Defendant's exhibits with respect to the measurements, the gross living area determination, and the effective age and class of the

---

[5] Vedder testified that the main level of the "I-2 house" is 600 square feet, suggesting a value of $21,492 based on the cost factor book figure of $35.82 per square foot. (*See* Def's Ex A at 8, 9, 12.) He testified that he determined a value of $20,612 based on a few adjustments and application of a "local cost modifier."

subject property improvements. Plaintiff testified that Defendant's exhibits contain an error indicating that a "lean to" was new property when, in reality, it existed in 1999 and Plaintiff moved it from one part of the subject property to another. (*See* Def's Ex A at 6 (photographs).)

## II. ANALYSIS

The issue before the court is the 2010-11 exception value of the subject property. The value of new property and new improvements is commonly referred to as "exception value"; it "is a term used to identify certain changes to property for the current tax year that result in additions to both [real market value] and [maximum assessed value], and an *exception* to the typical constitutional and statutory cap of three percent on annual increases to [maximum assessed value]." *Banducci v. Douglas County Assessor*, TC-MD No 090069C, WL 3706451 at *1 n 4 (Sept. 23, 2010) (internal citations omitted) (emphasis in original). " 'New property or new improvements' means changes in the value of property as the result of: (A) New construction, reconstruction, major additions, remodeling, renovation or rehabilitation of property[.]" ORS 308.149(5)(a).[6] New improvements do not include "minor construction," which is defined as "additions of real property improvements, the real market value of which does not exceed $10,000 in any assessment year or $25,000 for cumulative additions made over five assessment years." ORS 308.149(5)(b), (6).

Plaintiff has the burden of proof and must establish its case by a preponderance of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet [its] burden of proof." *Reed v. Dept. of Rev.,* 310 Or 260, 265, 798 P2d 235 (1990). "[T]he court has

---

[6] All references to the Oregon Revised Statutes (ORS) are to 2009.

jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412.

Plaintiff presented two arguments in support of his contention that the 2010-11 exception value was added in error. First, Plaintiff argued at trial that Defendant was required to comply with the omitted property assessment statutes ORS 311.216 to 311.232, including the notice requirements. He testified that Defendant failed to send him notice of an omitted property assessment. In support of his position, Plaintiff cites *Ableman v. Multnomah County Assessor* (*Ableman*), TC-MD No 030746D at 3 (Aug 19, 2003), in which this court held that the assessor must comply with the requirements of ORS 311.216 to 311.232 when adding omitted property; including the property as exception value on the taxpayer's property tax statement is insufficient notice. Second, in his Complaint, Plaintiff cites ORS 308.149(6), which provides the definition of "minor construction." As stated above, "minor construction" is excluded from "new property or new improvements" and cannot be added as exception value under ORS 308.149(5)(b)(B). The court first considers Plaintiff's argument that his remodel work is omitted property and cannot be added as 2010-11 exception value.

Plaintiff testified extensively concerning the costs incurred in his remodel work on the subject property and the timeline of that work. Plaintiff testified that he began remodel work on the subject property in 2001 and completed the work in 2005. In support of his testimony, Plaintiff presented evidence in the form of check registers from 2001 through 2005 and a few bank statements. Vedder stated that subject property was inspected in 2000 and was not inspected again until Defendant "discovered" Plaintiff's work in 2009. Defendant did not present any evidence rebutting Plaintiff's remodel timeline. Thus, the court finds that Plaintiff's remodel work occurred from 2001 through 2005.

In *Metzger v. Multnomah County Assessor* (*Metzger*), the county assessor had added as 2004-05 exception value, the value of "various improvements made between 2000 and 2003." *Metzger*, TC-MD No 050231C at 4 (Apr 20, 2006). The court held that exception value is limited to "additions to property added since the prior year's assessment date, unless omitted property is involved." *Id.* Finding that "[t]he undisputed testimony was that everything but the in-law cottage was in place by March 2001[,]" the court determined that only the value of the "in-law cottage" could be added as exception value for the 2004-05 tax year. *Id.* at 4, 6. The court in *Metzger* explained:

> "[I]n the instances where the assessor is unaware of the addition of new property in the year it is added and therefore fails to add that property to the rolls, ORS 311.216 authorizes the assessor to add the omitted property to the rolls when it is discovered, and to go back five years from the last roll returned. ORS 308.156(3) allows the assessor to make corresponding adjustments to the MAV for the same time-frame. Thus, the appropriate method for adding value initially missed is to proceed under the omitted property statutes in ORS chapters 311 and 308."

*Id.* Similarly, the court in *Ableman* stated that the assessor

> "is required to give notice to the property owner of 'the assessor's intention to add the property to the assessment or tax roll under ORS 311.216 to 311.232' and an opportunity for [the taxpayer] to show cause why the property should not be added to the tax roll. ORS 311.219. In this case, the only notice given to Plaintiff was the statement of exception value on the annual property tax statement[.]"

*Ableman*, TC-MD No 030746D at 2-3. Consequently, the court held that the exception value at issue was improperly added and "must be removed." *Id* at 3.

In response to Plaintiff's argument that it was required to comply with the omitted property assessment statutes, Defendant cites language in Article XI, section 11(1)(d) of the Oregon Constitution that the county assessor is required to add the value of new improvements

/ / /

/ / /

as exception value when the value is "taken into account."[7] Defendant argues that the value is "taken into account" when the assessor "discovers" the new improvements, not when they are actually completed. Under that interpretation, Defendant argues that it did not "discover" Plaintiff's remodel work until 2009, so it is proper that the value was "taken into account" by Defendant as 2010-11 exception value.

Defendant's interpretation of the language "taken into account" in Article XI, section 11(1)(d) of the Oregon Constitution disregards the distinction between exception value and omitted property. ORS 311.216(1) applies by its terms to the situation described by Defendant:

> "*Whenever the assessor discovers* or receives credible information, or if the assessor has reason to believe that any real or personal property * * * has from any cause been omitted, in whole or in part, from assessment and taxation on the current assessment and tax rolls or on any such rolls for any year or years not exceeding five years prior to the last certified roll, the assessor shall give notice as provided in ORS 311.219."

---

[7] Article XI, section 11 states, in pertinent part:

"(1)(a) For the tax year beginning July 1, 1997, each unit of property in this state shall have a maximum assessed value for ad valorem property tax purposes that does not exceed the property's real market value for the tax year beginning July 1, 1995, reduced by 10 percent.

"(b) For tax years beginning after July 1, 1997, the property's maximum assessed value shall not increase by more than three percent from the previous tax year.

"(c) Notwithstanding paragraph (a) or (b) of this subsection, property shall be valued at the ratio of average maximum assessed value to average real market value of property located in the area in which the property is located that is within the same property class, if on or after July 1, 1995:

"(A) The property is new property or new improvements to property;

"* * * * *

"(D) The property is first taken into account as omitted property;

"* * * * *

"(d) Property shall be valued under paragraph (c) of this subsection only for the first tax year in which the changes described in paragraph (c) of this subsection are *taken into account* following the effective date of this section. For each tax year thereafter, the limits described in paragraph (b) of this subsection apply."

(Emphasis added.)

(Emphasis added.) That conclusion is supported by the court's decisions in both *Metzler* and *Ableman*. Vedder stated that Defendant "[d]iscovered" the remodel in 2009, but presented no evidence to contradict Plaintiff's sworn testimony that the remodel work was completed between 2001 and 2005. Accordingly, the court finds that the value of Plaintiff's remodel work was improperly added to the tax roll as 2010-11 exception value. Having determined that Defendant improperly added the value of Plaintiff's remodel work on the subject property as 2010-11 exception value, the court need not address whether the remodel work was "minor construction."

III.  CONCLUSION

After carefully considering the testimony and evidence presented, the court finds that the remodel work completed on the subject property between 2001 and 2005 was improperly added as exception value for the 2010-11 tax year. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is granted. The 2010-11 exception real market value of Account R44324 shall be removed.

Dated this ____ day of January 2012.


_____
ALLISON R. BOOMER
MAGISTRATE PRO TEMPORE


*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Magistrate Pro Tempore Allison R. Boomer on January 26, 2012. The Court filed and entered this document on January 26, 2012.*