IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

JOHN MICHAEL MURPHY, )
and MEGAN KATE MURPHY, )
)
      Plaintiffs, ) TC-MD 180247R
   v. )
)
MULTNOMAH COUNTY ASSESSOR, )
)
      Defendant. ) **DECISION**

     Plaintiffs appealed Defendant's Board of Property Tax Appeals Real Property Order,

mailed April 19, 2018, which reduced the tax roll real market value of the subject property from

$1,905,900 to $1,770,000 for the 2017-18 tax year.

     On September 12, 2018, a case management conference was held. Megan Murphy

(Murphy) appeared on behalf of Plaintiffs and Barry Dayton (Dayton) appeared on behalf of

Defendant. At the conference, the parties agreed to a trial on February 27, 2019, in the

courtroom of the Oregon Tax Court. The court orally set the deadline for the exchange of

exhibits for February 13, 2019, if sent by US mail or, February 18, 2019, if hand-delivered. The

trial dates and exhibit exchange deadlines were memorialized by a Notice of Schedule Court

Proceeding which the court send to the parties by email on September 12, 2018. On February

15, 2019, the court received Defendant's trial exhibits. On February 22, 2019, the court received

an authorization to represent form for John Taylor, a registered appraiser, along with a letter

indicating he had just been engaged by Plaintiffs and requesting a change in the trial date. By

the parties' agreement, the court scheduled a case management conference for February 26,

2019, to consider Plaintiffs' request to change the trial date and reset the exhibit exchange

/ / /

deadline. Trial was rescheduled to April 16, 2019, to be held by telephone. Plaintiffs' request to reset the exhibit exchange deadlines was denied.

A telephonic trial was held on April 16, 2019. Taylor appeared and testified on behalf of Plaintiffs. Murphy also testified on behalf of Plaintiffs. Dayton appeared on behalf of Defendant. Jan Leendertse (Leendertse) testified on behalf of Defendant. Plaintiffs did not offer exhibits at trial. Defendant's Exhibit A was admitted into evidence.

## I. STATEMENT OF FACTS

The subject property is a .2 acre lot located in the Hillside area near downtown Portland. (Def's Ex A at 6.) Improvements consist of a 3,878 square foot house with 3 bedrooms and 2.1 baths, built in 1981. (Def's Ex A at 14.) The houses' current condition is average with some deferred maintenance and part of the lot is unusable due to its slope. (Def's Ex A at 6.) Some of the homes in the area have a view lot, but the Subject Property does not. (*Id*.)

Taylor testified that he has a bachelor's degree in business economics and holds a senior appraisal status. He previously worked as an appraiser for Multnomah County for three years and for Clackamas County for 20 years. Taylor testified that he was contacted by Plaintiffs just weeks before trial and did some appraisal analysis but did not have enough time to prepare a written appraisal by the exhibit exchange deadlines set by the court.

Taylor testified that he concentrated on two comparable sales used in Defendant's appraisal. Comparable #1 was on SW Georgian Place and sold for $1,295,000 on September 2, 2016. Defendant's adjusted sales price was $1,661,000 after adjusting for time of sale, location, site size, gross living area, and room count. Taylor testified that he also adjusted for time of sale, location, site size, gross living area and room count. Those adjustments were similar to Defendant's appraisal. Where Taylor's opinion of value substantially differed, was in an

adjustment for a "form of external obsolescence" which resulted from the maximum assessed value (MAV) being high in proportion to the real market value (RMV). Taylor testified that the high proportion had the effect of making taxes higher than other properties with similar characteristics. Taylor testified he had done a study indicting that a typical buyer would be dissuaded from purchasing the property with higher relative taxes, which would result in a lower potential sale price for the subject property. Taylor found that Comparable #1's proportion of MAV to RMV was 72 percent while the subject property's proportion was 81 percent. Taylor adjusted the property by $46,463 due to this external obsolescence tax factor.

The second property reviewed by Taylor was Defendant's Comparable #4, located on NW Melinda. Comparable #4 sold for $1,875,000 on June 24, 2016. Defendant's adjusted sale price was $1,701,000, after adjusting for time of sale, site size, room count, and gross living area, including a $75,000 adjustment for a view. Taylor made similar adjustments to those made in Defendant's appraisal including an adjustment for the view that Comparable #4 had but the subject property did not. Taylor testified that he performed a linear regression analysis and paired sales, using three properties with a view and three without a view and found differences in property value due to the view were between $100,000 and $230,000. Taylor settled on an adjustment of $150,000 for the view, twice Defendant's adjustment. Taylor also adjusted the value for external obsolescence because this property had a MAV to RMV ratio of only 54 percent.

Taylor testified that he did not confirm all the sales he used in determining value because he was confident that the Defendant's appraiser would perform that function. Taylor did not use the cost or income approach to property valuation because he felt those approaches were rarely used for residential properties.

Murphy testified that she was family friends with the owners of the property located on SW Georgian Place. She testified that the Defendant's appraisal contained incorrect information about this property. She had seen that the property had been significantly remodeled, the laundry room had been moved upstairs, the basement had been completely finished.[1]

Leenderste testified that he has been an appraiser for 33 years. He testified that he considered 40 sales similar to the subject property, pared those considered down to 15 and selected five comparable sales to use his appraisal report. Leenderste testified that he verified the sales on the comparable properties he selected and contacted at least one person for each sale to determine they were arms-length transactions. Leenderste determined the value for the subject property as of January 1, 2017, was $1.7 million. Leenderste testified that he did not make an adjustment based on the ratio of RMV to MAV because it was not a typical adjustment that appraisers make on a single-family residence.

## II. ANALYSIS

A. *Defendant's Motion for a Directed Verdict*

At the close of Plaintiffs' case-in-chief, Defendant orally moved to dismiss the case for failure to present evidence of value. The court construed Defendant's motion as one under Tax Court Rule (TCR) 60. TCR 60 states in pertinent part:

> "Any party may move for a dismissal at the close of the evidence offered by an opponent or at the close of all the evidence. * * * A motion for dismissal must state the specific grounds therefor. The judgment of the court granting a motion for dismissal will be with prejudice."

The Tax Court previously has stated that "[i]n order to prevail on a motion for directed verdict pursuant to TCR 60, the moving party must demonstrate that the record contains no evidence to

---

[1] Plaintiffs corrected the statement about the basement being completely finished in a letter to the court dated April 18, 2019. Plaintiffs now state the basement was carpeted and looked finished.

support the nonmoving party's claim or claims. The court will not weigh the evidence; rather, it will consider the entire record and afford the nonmoving party all reasonable inferences drawn therefrom, in the light most favorable to that party." *Freitag v. Dept. of Rev.*, 18 OTR 368, 373–74 (2005) (citations omitted). In *Freitag*, the court found that other than an opinion of the ultimate value of the subject property, the taxpayer did not present any evidence of value. *Id.* at 369–70, 374. Instead, the taxpayer merely attacked the county's position. The court noted that "it is not enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the [real market value] of their property." *Id*. at 374 (quoting *Poddar v. Dept. of Rev.*, 18 OTR 324, 332 (2005) ). Defendant's argument is that without a written appraisal, Plaintiffs did not present persuasive evidence of value, and by Taylor using the comparable properties selected in Defendant's appraisal, the evidence amounted to only a criticism of Defendant's evidence. Although Defendant's argument is not without merit, the court orally ruled that Plaintiffs met the very minimal standard under TCR 60 because Taylor had visited the properties, adjusted for conditions, and presented *some* evidence of value. Thus, Defendant's motion under TCR 60 was denied. Ultimately, for the reasons stated below the court finds that Plaintiffs' oral evidence was insufficient to meet their burden of proof.

B.      *Real Market Value of the Subject Property*

Plaintiffs bear the burden of proof and must establish their case by a preponderance of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). "[I]t is not enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the [real market value] of their property." *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have

failed to meet his burden of proof * * *." *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990). "[T]he court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412.

The issue before the court is the real market value of the subject property for the 2017-18 tax year. "Real market value is the standard used throughout the ad valorem statutes except for special assessments." *Richardson v. Clackamas County Assessor*, TC-MD 020869D, 2003 WL 21263620 at *2 (Or Tax M Div Mar 26, 2003) (citations omitted). Real market value is defined in ORS 308.205(1),[2] which states:

> "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."

The assessment date for the 2017-18 tax year is January 1, 2017. ORS 308.007; ORS 308.210. The real market value of all property "shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue[.]" ORS 308.205(2). Three approaches to value must be considered: (1) the cost approach; (2) the sales comparison approach; and (3) the income approach. OAR 150-308-0240(2)(a). Although all three approaches must be considered, all three approaches may not be applicable in a given case. *Id*. Here, both parties relied on the sales comparison approach, although Defendant also considered the cost and income approaches.

The sales comparison approach "may be used to value improved properties, vacant land, or land being considered as though vacant." *Chambers Management Corp v. Lane County*

---

[2] The court's references to the Oregon Revised Statutes are to 2015.

*Assessor*, TC-MD 060354D, 2007 WL 1068455 at *3 (Or Tax M Div Apr 3, 2007) (citations omitted). "The court looks for arm's length sale transactions of property similar in size, quality, age and location" to the subject property. *Richardson*, 2003 WL 21263620 at *3.

> "In utilizing the sales comparison approach, only actual market transactions of property comparable to the subject, or adjusted to be comparable, may be used. All transactions utilized in the sales comparison approach must be verified to ensure they reflect arms-length market transactions. When non-typical market conditions of sale are involved in a transaction (duress, death, foreclosures, interrelated corporations or persons, etc.) the transaction may not be used in the sales comparison approach unless market-based adjustments can be made for the non-typical market condition."

OAR 150-308-0240(2)(c).

As noted above, Plaintiffs' case was hampered by its failure to comply with the exhibit exchange deadlines. Plaintiffs' use of Defendant's appraisal in lieu of submitting their own appraisal is problematic. The court finds that the evidence of market value presented by Plaintiffs was more akin to criticizing Defendant's evidence. Taylor's testimony about his studies on the effect of a lack of view are plausible but are unsupported by any appraisal data. The court does not find Taylor's view adjustment "more likely" than Defendant's. Accordingly, Plaintiffs have not met their burden of proof on that issue.

With regard to Taylor's theory that a high MAV to RMV proportion is a "form of external obsolescence" the court notes that the tax burden of a property is not a well-established basis for finding external obsolescence—the court could find no case in support of such a finding. On the surface the idea makes sense. The Appraisal of Real Estate states that "[e]xternal obsolescence is a loss in value caused by negative externalities i.e., factors outside a property." Appraisal Institute, *The Appraisal of Real Estate* 632 (14th ed 2014). That definition

/ / /

/ / /

appears to fit, however, without market data on the effect of a high MAV to RMV ratio the court finds the adjustment unpersuasive.[3]

### III. CONCLUSION

After careful consideration, the court finds that Plaintiffs have failed to meet their burden of proof. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs appeal is denied.

Dated this ____ day of October, 2019.

_____
RICHARD DAVIS
MAGISTRATE

*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of this Decision or this Decision cannot be changed. TCR-MD 19 B.*

*This document was signed by Magistrate Richard Davis and entered on October 15, 2019.*

---

[3] "Direct comparison of similar properties with and without external obsolescence can be the most persuasive measurement of the effect of negative externalities on value when enough data is available for that sort of analysis." *Id*. at 634-35; *see also Truitt Bros. v. Dept. of Rev.*, 302 Or 603, 611, 732 P2d 497 (1987) (endorsing paired sales analysis as the "preferable" method for determining external obsolescence). The only other acceptable method is to capitalize the rent loss attributable to the external obsolescence. *Truitt Bros.*, 302 Or at 611.