IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

RALPH L. CRAWFORD,            )
                                       )
        Plaintiff,          )   TC-MD 130462C
                                       )
     v.                )
                                       )
DOUGLAS COUNTY ASSESSOR,   )
                                       )
        Defendant.    )   **FINAL DECISION OF DISMISSAL**

The court entered its Decision of Dismissal in the above-entitled matter on February 19, 2014. The court did not receive a request for an award of costs and disbursements (TCR-MD 19) within 14 days after its Decision of Dismissal was entered. The court's Final Decision of Dismissal incorporates its Decision of Dismissal without change.

Plaintiff appealed Defendant's omitted property assessment for tax years 2007-08 through 2012-13, issued June 14, 2013. Trial was held by telephone December 14, 2013. Plaintiff appeared on his own behalf. Defendant was represented by Paul Meyer, Assistant County Counsel, Douglas County. Plaintiff's Exhibits 1, 3 through 6, 8 through 16, 18, 19, 23, 24, and 30, were admitted at trial without objection. Defendant did not present any witnesses to testify at trial but did submit rebuttal Exhibit B during its cross-examination of Plaintiff.

## I. STATEMENT OF FACTS

According to the testimony and certain exhibits, the subject property consists of a small house approximately 750 to 800 square feet in size, and two other structures (approximately 315 square feet and 450 square feet), on five acres of land located in a remote area in the small town

/ / /

/ / /

of Dillard, Oregon, in close proximity to a rock quarry.[1] (Ptf's Exs 1, 18, 19.) The property is identified in Defendant's records as Account R44324. (Ptf's Compl at 1, 3.)

Defendant discovered Plaintiff made improvements to the property going back to 2001 and added omitted property to the assessment and tax rolls for tax years 2007-08 through 2012-13. (*Id*. at 3.) The value was added June 14, 2013. (*Id*.) The omitted property notice Plaintiff submitted with his Complaint lists only the new, changed assessed values, not the increases in real market value.[2] Defendant stated during its opening that the real market value for tax year 2007-08, after the addition of omitted property, was $157,468, and that the value of the property added (referred to as "exception value"), was $42,843. Plaintiff did not dispute those figures. The 2007-08 tax year is the first of the six years for which omitted property was added to the rolls and Defendant began by determining the value for that year and then adjusting the value for subsequent years based on trending from its annual ratio studies.

Defendant's omitted property assessment notice submitted by Plaintiff provides the following reason for the changes in value: "[h]ouse I2 was remodeled & added on to; previous value was $500 on the building, is now a class 2 house w/finished attic area, also added a general purpose shed, concrete, lean-to & small deck. There are two other houses on the property & due to condition were valued at $500 each. The homesite was also adjusted for lack of water & location (negative adj) and additional utilities & creek influence (positive adj)." (*Id*.)

---

[1] Plaintiff's Exhibit 19 is a rudimentary sketch of Plaintiff's home after the remodel that Plaintiff testified was prepared by two individuals, one of whom is a former employee of the Douglas County Assessor's office. That document indicates that the square footage of the home is 754.5 square feet, that there is a 457.4 square foot yellow storage building, and a 314.6 square foot red storage building. Defendant disputed those measurements on cross-examination, suggesting the main house was closer to 830 square feet if properly measured. In the end, the court need not know the precise size of the home and outbuildings to render its decision.

[2] The notice Plaintiff appealed from is Defendant's notice of the correction to the rolls that added the omitted property value and increased the taxes. (Ptf's Compl at 3.) It is dated June 14, 2013. Plaintiff did not submit the notice of intent to add omitted property that the county sends pursuant to ORS 311.216 and ORS 311.219. That notice often includes more detailed information including the amount of real market value being added to the account for the omitted property, and the new maximum assessed and assessed values.

Plaintiff asserts in his Complaint that: 1) Defendant's omitted property assessment is in error because the remodel work he did to the subject property constituted "minor construction" and therefore could not be added to the rolls as omitted property; 2) Defendant has misclassified some of his property; 3) some of the structures Defendant added as omitted property existed before Plaintiff's 1999 purchase and cannot be added as omitted property; 4) Defendant has incorrectly measured some of his buildings; 5) Defendant has incorrectly identified the number of dwellings on the property, allegedly treating the two other houses that Plaintiff purportedly decommissioned by removing the kitchen and bathroom as dwellings when, in fact, they are no more than storage sheds or outbuildings; 6) Defendant added omitted property for years it had no authority to adjust by omit assessment, and 7) Defendant overvalued his land. (Ptf's Compl at 2.)

According to Plaintiff's testimony, he bought the subject property in 1999 for approximately $68,000. Plaintiff testified that between 2001 and December 2005 he did some work on the property, decommissioning two of the three existing structures and remodeling the third structure, turning it into his home. Plaintiff testified that, between 2001 and 2005, he lived in one of the two now decommissioned buildings (referred to by Plaintiff as "the yellow house") while he worked on the home he remodeled and now lives in (referred to by the parties as "I2"). Defendant questioned Plaintiff on cross-examination about the "yellow house," and in line with that questioning referred to Rebuttal Exhibit B at 6. That exhibit is a picture of the yellow house and shows smoke coming out of the chimney. Plaintiff was asked during cross-examination to explain why there was smoke coming out of the chimney and why there was a vehicle parked outside the building and a dog inside barking at the time an appraiser from the assessor's office

///

made a site visit to the subject property. In response, Plaintiff testified that he and his son occasionally go over to that building to "run the stove."

Plaintiff presented a summary of his alleged building material costs, which he testified was based on entries in his checkbook register. Plaintiff also submitted a few bank statements and some receipts for building materials. (Ptf's Exs 7, 8.) Plaintiff testified that his total costs for building materials were $8,984.28. (Ptf's Ex 9.)

Plaintiff's Exhibit 10 is an estimate of his labor costs because Plaintiff testified that he did the majority of the work himself. Plaintiff presented an estimate of the number of hours he spent working on the property between 2001 and 2005 based on calculations he had made for a previous trial in this court in 2010, five years after the work was completed. Plaintiff estimated that he spent 580 hours working on the home, and he estimated the value of his labor at $10 per hour. When asked on cross-examination how Plaintiff determined that labor costs should be $10 per hour, Plaintiff testified that he had a little bit of work done by a gentleman who worked at a nearby quarry, who told him that he had worked in construction in the past. Plaintiff testified that he offered that individual $10 per hour to do some work on his home, and the individual agreed to that figure. That is the only evidence on the cost of labor. Plaintiff further acknowledged on cross-examination that his costs did not include builder overhead or profit. Plaintiff further testified that he bought used building materials for the remodel when possible. That work is the basis for Defendant's addition of omitted property, which added the value of the remodel as "exception value," and which prompted Plaintiff's appeal.

Plaintiff acknowledged on cross-examination that the work done to the home he now lives in included the addition of the kitchen floor and the living room floor, installation of insulation, drywall, kitchen cabinets and counters, interior trim, a shower and toilet, a wood

stove, new carpeting, and some new plumbing and wiring. That information came from

Plaintiff's own Exhibit 10, as well as his sworn testimony at trial. Plaintiff further testified, on

cross-examination, that he raised the roof on the house and added finished attic living space,

some new framing and windows, new exterior siding, interior doors, and exterior concrete.

Plaintiff testified to a letter he wrote, apparently to the building code division during the

remodel permitting process, that explains his intent. That document states in part, and Plaintiff

so testified, that he "plan[ned] to turn a homestead built in 1899 into a modern efficient living

unit." (Ptf's Ex 6.)

As for the total real market value of the subject property, Plaintiff did not request any

specific values in his Complaint, there are none in his evidence, and Plaintiff was quite reluctant

to assert a value at trial. Ultimately, when questioned on cross-examination, Plaintiff estimated

that the total real market value of his property on January 1, 2007, was approximately $88,000,

which was, according to Plaintiff, equal to his $68,000 purchase price in 1999 plus another

$20,000. Plaintiff did not elaborate.

The subject property is located on Kent Creek Road. At trial Plaintiff testified that he

"downloaded" all sales on Kent Creek Road occurring between 2000 and 2013. Plaintiff

selected six sales from that list. (Ptf's Ex 24.) Two of the sales are land only and the remaining

four have structures on them. The dates of the sales are September 19, 2002, March 16, 2012,

August 22, 2001, May 1, 2008, October 20, 2009, and May 19, 2005. (*Id*. at 1-6.) The sale

prices ranged from a low of $34,000 for 61.17 acres of land that sold in September 2002 to a

high of $350,000 for an 80 acre parcel of land that sold in May 2005. Plaintiff testified that the

80 acre parcel is the quarry next to his property. All of the four improved property sales are on

lots at least twice as big as the subject property, which is a five acre lot (the lots for the

comparables with homes range in size from 9.73 acres (comp #5) to 61.54 acres (comp #4)). (*Id*. at 2-5.) Only one of the four homes is similar in size to Plaintiff's remodeled home, but it is located on 17.02 acres of land and sold in August 2001, approximately six years before the January 1, 2007, assessment date for the earliest of the six years involved in the omitted property assessment. (*Id*. at 3.) Plaintiff made no adjustments to any of his comparable sales. Plaintiff is not an appraiser.

## II. ANALYSIS

A.    *Plaintiff's requested relief*

Plaintiff states in his Complaint that he seeks a "decision on minor construction issue; omitted property dates; valuation of improvements/land[.]" (Ptf's Compl at 1.) Plaintiff elaborated in a written narrative attached to the Complaint and titled "SECTION 3," that there should be no omitted property because the work he did constituted " 'minor construction as defined in ORS 308.149(6)." (*Id*. at 2.) Plaintiff further asserted that Defendant had misclassified the house, that two of the structures existed prior to his purchase in 1999 and should not have been added as omitted property, that Defendant has incorrectly measured certain structures, that there is only one dwelling on the property and not three as Plaintiff believes Defendant asserts, that the scope of the omitted property assessment is statutorily limited to five years prior to the 2010-11 tax year, which is when Defendant learned of Plaintiff's remodeling, and that Defendant has overvalued his land. (*Id*.)

B.    *Burden of proof*

Because Plaintiff is the party seeking affirmative relief in this appeal, he must carry the burden of proof. To do so, Plaintiff must prove his requested real market value by a preponderance

of the evidence. ORS 305.427.[3] A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." *Reed v. Dept. of Rev.,* 310 Or 260, 265, 798 P2d 235 (1990). Moreover, a taxpayer cannot sustain its burden of proof simply by criticizing the county's position, but must instead "provide competent evidence of the [real market value] of [the subject] property." *Poddar v. Dept of Rev.*, 18 OTR 324, 332 (2005) (quoting *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002) (citation omitted)). "Competent evidence includes appraisal reports and sales adjusted for time, location, size, quality, and other distinguishing differences, and testimony from licensed professionals such as appraisers, real estate agents, and licensed brokers." *Danielson v. Multnomah County Assessor*, TC-MD No 110300D at 7 (Mar 13, 2012).

C.      *Real market value*

Plaintiff has submitted virtually no evidence of the real market value of his property. The subject property consists of a home approximately 750 square feet in size and two smaller outbuildings located on five acres. Plaintiff insists Defendant has overvalued his property. Plaintiff did present information regarding the sale of six properties, but those sales occurred during an 11 year time frame between 2001 and 2012, involved properties on lots ranging in size from approximately 10 acres to 80 acres, and selling for prices between $34,000 and $350,000. (Ptf's Ex 24.) Plaintiff made no adjustments to his comparable sales. Only two of the six sales were land only transactions, and they involved the sale of a 61.17 acre parcel for $34,000 on September 19, 2002, and an 80.08 acre parcel that sold for $350,000 on May 19, 2005. The subject property is five acres. (*Id*. at 1, 6.) The other four sales are improved with homes, like the subject, but are either vastly different in terms of the size of the lot (all four being on much

---

[3] The court's references to the Oregon Revised Statutes (ORS) are to 2011.

larger parcels) or the size of the home; three of the four homes are 1,536 square feet, 1,637 square feet, and 1,877 square feet, compared to the subject home which is approximately 750 square feet. (*Id.* at 2, 4, 5.) Moreover, Plaintiff's comparables sold on dates either well before or well after the operative assessment date of January 1, 2007. (*Id*. 2-5.)

Plaintiff is not an appraiser and there is no indication that he has any formal training in property valuation. And, Plaintiff did not make any adjustments to his comparable sales. Because of those deficiencies, the court attributes no weight to that evidence. There is, therefore, no evidence as to total real market value or the real market value of Plaintiff's land.

D.      *Omitted property*

Turning to Plaintiff's allegation that the remodeling work he did constituted "minor construction" and, under Oregon law, does not constitute "exception value," and that it cannot be added as omitted property, the court disagrees. ORS 311.216 to ORS 311.223 require the assessor to add omitted property to the rolls. ORS 311.216(1) requires the assessor to add to the rolls any property, including buildings and structures, which the assessor discovers "has from any cause been omitted, in whole or in part, from assessment and taxation on the current assessment and tax rolls or on any such rolls for any year or years not exceeding five years prior to the last certified roll."

The omitted assessment in this case was made in June 2013. (Ptf's Compl at 3.) The last certified roll was for tax year 2012-13, and the five prior years go back to 2007-08. The statute Plaintiff cites, ORS 308.149(6), is part of a collection of statutes requiring increases in maximum assessed value above the standard three percent annual amount provided in ORS 308.146(1), to account for new property or new improvements to property, unless the new property constitutes "minor construction." ORS 308.146(3); ORS 308.149(5)(a), (b)(B), (6); ORS 308.153. "Minor

construction," in turn, is defined in ORS 308.149(6) as "additions of real property improvements, the real market value of which does not exceed $10,000 in any assessment year or $25,000 for cumulative additions made over five assessment years."

The evidence in this case is that Plaintiff made improvements to the subject property between sometime in 2001 through December 2005. Plaintiff alleges that the cost of those improvements, including his estimate of the value of his own labor performing the work, came to just under $15,000. There is virtually no credible evidence to support that claim. Plaintiff's estimated $10 per hour labor cost is based on the amount he claims to have paid a laborer who worked at a nearby quarry. There is no documentary evidence or independent testimony to support that claim. Additionally, valuing property using the cost approach requires evidence of market costs, not actual costs. The two can be the same, but that must be established by the evidence.

As for the number of hours spent working on the home, Plaintiff's number is an after-the-fact estimate that merits little if any weight.

Finally, it is not clear to the court whether Plaintiff provided the court with all the costs. Plus, he installed new and used materials, and the question of value is the increase in value to the home, not the cost of materials and labor. Under accepted appraisal theory, cost is not necessarily equal to value, particularly on a remodel. There is, therefore, no way for the court to determine whether the remodeling work constituted new property, which can be added to the rolls as omitted property and generate an increase in maximum assessed value above the typical three percent annual increase limitation provided in ORS 308.146(1), or whether the remodeling was, as Plaintiff asserts, only minor construction, the real market value of which can be added to

/ / /

the assessment and tax rolls but cannot result in a change in maximum assessed value. *See* ORS 308.146(2), (3); ORS 308.153.

E.      *Other matters*

The other matters Plaintiff raises are attacks on the assessor's records for things such as the classification of Plaintiff's home (class 2 or class 1 or less). Plaintiff objects to Defendant's classification of his home, but has not demonstrated how the alleged misclassification affected value. Plaintiff also asserts that Defendant has erred in the classification of two ancillary structures, Plaintiff asserting that Defendant has treated the structures as dwellings. Defendant's omitted property notice identifies the two structures as "houses" and notes that they were valued at $500 each due to condition. Plaintiff's concern over the alleged misclassification of those two buildings is irrelevant because Plaintiff did not provide any value evidence for those structures to show how a misclassification mattered. Plaintiff also asserts there are problems with Defendant's measurements for his home, but has failed to persuasively substantiate that assertion or demonstrate how any mistakes in measurement affect the value of that structure. Overall, Plaintiff's claims regarding those assertions are unsupported by any credible evidence and are in most instances trivial or incorrect. Plaintiff also failed to provide any evidence on the exception maximum assessed value.

Finally, after the trial Plaintiff submitted a written request to the court asking that the court disallow the submission of Defendant's "Exhibit B." (Ptf's Mot To Disallow Evidence at 1.) Defendant's Exhibit B was submitted as a rebuttal exhibit. Tax Court Rule (TCR) 56 B (3)(c) provides that "[d]ocuments submitted as rebuttal evidence only do not need to be exchanged." Defendant referenced only one page from that exhibit, Exhibit B at 6. The exhibit is a photograph of one of the outbuildings on the subject property referred to by the parties as

"the yellow house." The exhibit depicts a structure with smoke coming out of the chimney. Plaintiff testified that there is only one dwelling on the property and that the yellow house was decommissioned and is not used as a dwelling. The questioning by Defendant regarding that exhibit related to a site visit by the county appraiser. Plaintiff was asked whether there was smoke coming out of the chimney and whether he had any explanation for the fact that there was a vehicle parked outside and a dog inside barking at the time the appraiser visited the property. Plaintiff testified in response that "we" (referring to Plaintiff and his son) sometimes go over to the yellow house to "run the stove." Given the exception in the rule to the presentation of rebuttal exhibits and Defendant's use of that exhibit, Plaintiff's request to exclude the exhibit is denied.

F.      *Outcome*

After Plaintiff put on his case in chief, Defendant moved for dismissal, arguing that Plaintiff had failed to provide the court with sufficient evidence to enable the court to make a ruling on either the total real market value of the subject property, specifically the building at issue which generated the omitted property assessment Plaintiff has appealed, or the value added to the property by the work Plaintiff did between 2001 and December 2005, after he purchased the property in 1999.

TCR 60, made applicable to the Magistrate Division by the preface to the rules of this division, provides in part that "[a]ny party may move for a dismissal at the close of the evidence offered by an opponent," and that such motion "shall state the specific grounds therefor." This court has previously noted that it "has 'broad discretion to control the order and presentation of evidence.' " *Freitag v. Dept. of Rev. (Freitag I)*, 19 OTR 203, 205 (2007), citing *State v. Cox*, 337 Or 477, 490, 98 P3d 1103 (2004). The court in *Freitag I* then discussed Rule 60 motions,

stating that "[i]n order for a party to prevail on a motion to dismiss at trial made pursuant to TCR 60, 'the moving party must demonstrate that the record contains no evidence to support the nonmoving party's claim or claims.' " *Freitag I,* 19 OTR at 206, citing *Freitag v. Dept. of Rev. (Freitag II)*, 18 OTR 368, 373-74 (2005). The court went on to state that it "does not weigh the evidence, but considers the entire record, allowing the nonmoving party 'all reasonable inferences * * * in the light most favorable to that party.' " *Freitag II*, 18 OTR at 374.

The court in this case granted Defendant's motion because Plaintiff offered no evidence regarding the value of the subject property and it was clear to the court at the time the motion was made that Plaintiff could not succeed in his effort for a reduction in value. There was, therefore, no need for Defendant to present its appraisal through the testimony of its appraiser Ken Vedder.

Plaintiff's post-trial request to exclude Defendant's rebuttal Exhibit B at 6 is denied because TCR 56 B(3)(c) provides for an exception to the court's exchange rules under TCR-MD 10 C(1).

### III.  CONCLUSION

The court concludes that Plaintiff has failed to establish a prima facie case that the work he did to his home constituted minor construction or that there is an error in the real market value of the improvements or the land for the subject property identified as Account R44324. Additionally, Plaintiff did not provide any evidence for the court to calculate a difference maximum assessed value for the exception value for the subject property. Finally, the court concludes Plaintiff is legally incorrect in asserting that Defendant violated the statutes regarding tax years 2007-08 through 2012-13, the dates encompassed by the omitted property assessment. That being the case, Plaintiff's appeal is dismissed. Now, therefore,

IT IS THE DECISION OF THIS COURT that Defendant's motion to dismiss is granted and Plaintiff's appeal is dismissed.

Dated this ____ day of March 2014.

_____
DAN ROBINSON
MAGISTRATE

*If you want to appeal this Final Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed.*

*This document was signed by Magistrate Dan Robinson on March 17, 2014. The Court filed and entered this document on March 17, 2014.*