## IN THE OREGON TAX COURT

Leon G. RHODES,
Assessor of Josephine County, Oregon

*v.*

DEPARTMENT OF REVENUE

(TC 3058)

Gloria M. Roy, Assistant Legal Counsel for Josephine County, Grants Pass, represented plaintiff.

James C. Wallace, Assistant Attorney General, Department of Justice, Salem, Oregon, represented defendant.

Decision for defendant rendered April 8, 1991.

**CARL N. BYERS, Judge.**

Plaintiff, Josephine County Assessor, appeals from defendant's Opinion and Order No. 89-4310 which found for the taxpayer. At issue is the true cash value of a 1985 mobile home for the assessment dates January 1, 1988, and January 1, 1989.

The mobile home was purchased new in October, 1984, for an estimated cost of $27,181 and placed in its present location in a mobile home park. In February, 1988, it was sold at a foreclosure sale to the owner of the mobile home park for $10,000. In June, 1988, the owner sold the mobile home to a person named Brock for $15,000. In, February, 1989, the current owner purchased it from Brock for $15,000.

Plaintiff is aware of the past sales of the mobile home but does not consider them good indicators of market value. Plaintiff relies on a cost-less-depreciation analysis and a market-comparison approach using data obtained from sales of comparable mobile homes. The cost factors used by plaintiff are determined for the local area and depreciation is based on sales, adjusted for location. Plaintiff's analysis showed the subject's sale price of $15,000 was more than 30 percent below market value. Based on this analysis, plaintiff's appraiser concluded the sales were atypical. She speculated that perhaps the foreclosure sale influenced the subsequent sale prices of the property. In her opinion, the true cash value of the mobile home was $19,680.

Defendant believes the 1989 purchase price is the best evidence of the property's value. Defendant correctly noted that plaintiff's analysis requires adjustments involving subjective judgment. For example, defendant points to plaintiff's comparable sale No. 4, a similar mobile home located in the same mobile home park, which sold for $15,800. Plaintiff adjusted this sale $6,040 for quality and additional improvements. Defendant argues that $6,040 worth of differences is not reflected in plaintiff's own cost approach breakdown as found in the appraisal cards. Defendant also suggests weakness in plaintiff's analysis because comparable sale No. 3, a 1990 model, is shown as having a lesser quality and condition than the subject 1985 model.

Plaintiff recognizes the standards set forth in *Kem v. Dept. of Rev.,* 267 Or 111, 114, 514 P2d 1335 (1973), wherein the Supreme Court states:

> "A recent sale of the property in question is important in determining its market value. If the sale is a recent, voluntary, arm's length transaction between a buyer and seller, both of whom are knowledgeable and willing, then the sales price, while certainly not conclusive, is very persuasive of the market value."

Nevertheless, plaintiff believes its market comparison analysis proves in this case "the price paid was out of line with other market data." *Equity Land Res. v. Dept. of Rev.,* 268 Or 410, 415, 521 P2d 324 (1974).

In analyzing these competing positions, perhaps it is best to start with the obvious. Everyone knows identical, mass-produced items, such as shoes or toothbrushes, often sell for different amounts in different stores. Although mobile homes are mass produced and easier to compare than "stick built" houses, there may still be a significant variance in basic price. To that variable must be added moving and set-up expenses with associated landscaping and skirting costs. These all make location of a mobile home a significant factor. Likewise, the reputation of the manufacturer, the model, various accessories, such as air conditioning, awnings, decks or details of finish, are additional variables influencing value.

■     The goal we are seeking is found in the definition of market value.

> "Market Value as a basis for true cash value shall be taken to mean the most probable price in terms of money which a property will bring if exposed for sale in the open market, allowing a period of time and financing typical for the particular type of property involved and under conditions where both parties to the transaction are under no undue compulsion to sell or buy and are able, willing and reasonably well-informed." OAR 150-308.205-(A)(1)(a).

The essence of plaintiff's position is that the established market for mobile homes clearly shows the subject property should have sold for more than it did. If that is true, one would logically ask why it did not. In weighing the evidence, reason dictates that sale of the subject property is better evidence than an estimate based upon sales of other properties. Other properties may be similar, but they are not exactly like the subject. The actual sale of the subject eliminates all speculation, estimation, comparisons and distinctions. In short, it answers all hypothetical questions with actual fact.

The crucial question is whether the sale is a valid, arm's-length, market transaction. In this case, the court is persuaded it is. The subject property was offered by a knowledgeable and experienced seller who asked more for the property than it brought. The property was exposed on the market for at least two months during which time the seller

received two other offers. Those offers were in the neighborhood of $14,500 and $15,000 and both were subject to conditions. The taxpayer in this case purchased the mobile home for $15,000 cash. The court believes this sale is the best indication of value. Everything else that may be said about what the property should have sold for is conjecture.

The sale price of $15,000 is within the range for this property. The court finds it better evidence of value of the subject property than comparable sales of other properties. Accordingly, the court finds the true cash value of the subject property as of January 1, 1988, and January 1, 1989, is $15,000. Costs to neither party.