I. INTRODUCTION
This matter comes before the court for decision after trial. Plaintiff Grant County (the county) appeals from a Magistrate Division decision finding that, for the 2004-05 tax year, the real market value (RMV) of Defendant Hawkeye Mining Company (taxpayer) was $11,000. Taxpayer maintains that the property's RMV is no more than $5,400. The county alleges that the value is $68,000.
 II. FACTS
This appeal concerns the value of a 54.82-acre parcel of real property. Both parties presented exhibits and testimony in support of their respective theories of value at the trial.
The testimony and exhibits submitted indicate that the parties agree that the property is located in an isolated and mountainous area and is steep, rocky, and forested. There is limited access to the property by way of a United States Forest Service road. The property does not have water, electricity, or improvements. The property does include three patented mining claims. In addition, winter conditions typically limit access to the property.
The county presented two appraisals: one by Greg Pierce, a registered appraiser who contracts as a staff appraiser for the county, and one by Fred Ellis, an independent certified appraiser. Both testified as to the property's value and their methods for arriving at their respective values at trial. Both appraisals relied most heavily on three comparable sales.
Pierce's appraisal values the property at $74,000. At trial, Pierce testified that the value he reached was based in part on a determination that the property's highest and best use was as recreational property, stating that he came to that conclusion after speaking to area realtors and seeing increasing sales of this type in the area. Pierce testified that a 54-acre parcel was a small parcel in Grant County, and that the parcel's small size makes it more desirable for recreational use. *Page 384 
Ellis's appraisal values the property at $68,000. At trial, Ellis testified that number was based in part on a determination that the property's highest and best use was as recreational property. To determine the property's highest and best use, Ellis relied on the four-part test set forth in TheAppraisal of Real Estate, 12th edition.
Both appraisals relied on three comparable properties, each with topography, location, amenities, and access similar to that of the property at issue. All three comparables are on steep, wooded areas with similar access and topography to that of the property at issue here. The first comparable, an 80-acre parcel, sold June 20, 2003, for $75,000. The second comparable, a 79.61-acre parcel, sold July 6, 2004, for $80,000. The third comparable is a 50.32-acre parcel that sold May 29, 2002, for $65,000. Both appraisals made adjustments for the change in value over time and for the larger size of comparables one and two.
Taxpayer presented the testimony of Dr. Thorn Seal, Ph.D., in support of its position.[1] In addition to testifying that the property was steeply sloped and rocky, he testified that the property has limited access in the winter because of cold temperatures and snow. He stated that he was unable to get in to get a Christmas tree in 2006.
Seal also testified that the property, which is not currently being mined, had been purchased for mining speculation and that mining and mining speculation was, in his opinion, its highest and best use. He testified that taxpayer intended to wait until copper reached $10 per pound before engaging in mining. On cross-examination, he stated that copper was currently at an all time high of about $3.75 per pound.
Prior to 2003, the property at issue was part of a larger 111-acre parcel owned by Copperopolis Mining Company (Copperopolis). In 2002, the Magistrate Division of this court set the RMV of that property at $100 per acre, which is what Copperopolis paid for the property in February *Page 385 
2000. On March 10, 2003, a quitclaim deed was executed that transferred the 54.82 acres at issue here from Copperopolis to taxpayer for $5,400, or $100 an acre. Seal testified that he owned 40 percent of taxpayer and Copperopolis, and that the remainder of both companies was owned by three other people. He also testified that the directors of both taxpayer and Copperopolis are the same.
At the time of the transfer, the county, pursuant to statute, reappraised the property and increased the real market value (RMV) from $5,800 to $21,770 for the 2004-05 tax year. Taxpayer appealed that increase to the Board of Property Tax Appeals for Grant County, which upheld the assessment. Taxpayer then appealed to the Magistrate Division of this court. The magistrate determined that the RMV of the property was $200 an acre, noting that the county's appraiser did not testify and that the county's evidence as to valuation was meager. The county appeals that decision.
 III. ISSUE
What is the RMV of the property for the 2004-05 tax year?
 IV. ANALYSIS
1-3. The value of property is ultimately a question of fact.Chart Development Corp. v. Dept. of Rev., 16 OTR 9, 11
(2001). The party seeking affirmative relief has the burden of proof, and initially, the burden of going forward with the evidence. ORS 305.427.[2] The court "has the responsibility of making an original, independent, and de novo
determination of value. Chart Development, 16 OTR at 11
(citing Mid Oil Co. v. Dept. of Rev., 297 Or 583, 588,686 P2d 1020 (1984).
4. A property's RMV is "the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year." ORS 308.205(1). See also Magno v. Dept. ofRev., 19 OTR 51, 54-55 (2006). There are three methods used to calculate RMV: the cost approach, the income capitalization or income approach, and the sales comparison approach, also *Page 386 
known as the sales or market approach. Allen v. Dept. ofRev., 17 OTR 248, 252 (2003). See also OAR 150-308.205-(A)(2).[3] The plaintiff "must prove by a preponderance of the evidence that [its] approach to valuation best reflects the properti[y's] real market value." PiedmontPlaza Investors v. Dept. of Rev, 331 Or 585, 591,18 P3d 1092 (2001) (citation omitted).
The county presented two appraisals by qualified appraisers in support of its position. The appraisers testified to an RMV of $68,000 and $74,000, based on three comparable sales in the area in 2002 and 2003, and with adjustments made for differences between the comparable properties and the subject properties. The county asserts that the value of the property is at least $68,000. Ellis testified that before seeking out comparable sales, he determined that the highest and best use of the property was recreational use. His appraisal discusses that determination in the context of the following criteria: that recreational use was (1) physically possible, (2) legally permissible, (3) financially feasible, and (4) maximally productive. See Appraisal Institute, The Appraisalof Real Estate 307 (12th ed 2001). In addition, the appraisal report eliminates various other potential uses, such as mining or logging, based on those criteria.
To the extent that taxpayer put forth a theory of highest and best use, it did not rely on the above-mentioned factors, but merely contradicted the county's conclusion without offering any supporting documentation or expert testimony. Without any evidence in the record to the contrary, the court concludes that the highest and best use of the property is recreational use, and, therefore, that the comparable sales offered by the county are appropriate to consider in making a determination of value.
Taxpayer did not counter the county's appraisals by presenting its own appraisal report to the court, nor did it offer any testimony by a qualified appraiser as to the value of the property. Taxpayer offered only the testimony of Seal, who testified that the property's value should be set at the sale price of $5,400. A recent sale can be determinative of *Page 387 
market value. Chart Development, 16 OTR at 12. Such a sale, however, must be a "`recent, voluntary, arm's length transaction between a buyer and seller, both of whom are knowledgeable and willing.'" Rhodes v. Dept. of Rev.,12 OTR 24, 25 (1991) (quoting Kern v. Dept. of Rev.,267 Or 111, 114, 514 P2d 1335 (1973).
5. Here, the sale of the property by Copperopolis to tax-payer occurred in 2003. The testimony at trial indicates, however, that both corporations that were parties to the transaction — Copperopolis and taxpayer — are owned by Seal and three other people, with Seal holding 40 percent of each corporation. In addition, both corporations have the same board of directors. A sale between such corporations cannot be said to be an "arm's length transaction," see OAR 150-308.205-(A)(2)(c) (stating that a transaction between interrelated corporations is not at arm's length), and, therefore, such a sale is not determinative of the property's value. Accordingly, there is little, if any, evidence to counter the county's theory of value.
 V. CONCLUSION
The county offered two appraisals in support of its assertion that the value of the property is $68,000, effectively meeting its burden of proof under ORS 305.427. Taxpayer provided little evidence to support its theory of value. Accordingly, the court concludes that the county's theory of value is correct and sets the property's RMV at $68,000. Now, therefore,
IT IS THE DECISION OF THIS COURT that the property's RMV is $68,000.
[1] In addition, taxpayer had exchanged with the county information on other sales in the form of Exhibits H to K. Those exhibits were not offered and admitted into evidence at the trial so will not be considered.
[2] All references to the Oregon Revised Statutes (ORS) are to the 2003 edition.
[3] All references to the Oregon Administrative Rules (OAR) are to the 2003 edition. *Page 388