DECISION
Plaintiff has appealed the real market value (RMV) of a manufactured dwelling identified in the Lincoln County Assessor's (Assessor) records as Account Ml92410, for tax years 2005-06 and 2006-07.
Trial was held May 7, 2009. Plaintiff appeared on her own behalf. Defendant Lincoln County Assessor (Assessor) was represented by Shawn Wiley (Wiley), a sales analyst with the assessor's office for 19 years. Defendant Department of Revenue (Department) was represented by Rochelle Nedeau (Nedeau) Senior Assistant Attorney General, State of Oregon.
 I. STATEMENT OF FACTS
The property under appeal is a 1977 Silvercrest manufactured home owned by Plaintiff and located off Yachats River Road in rural Southeast Lincoln County. Plaintiff also owns the five acres of land on which the home is sited. Plaintiff testified that the five acres, identified as Account R244661, is part of the 200 acres that she owns at the location of the subject property. Plaintiff does not live in the manufactured home that is the subject of this appeal. Plaintiff lives in a stick-built home located elsewhere on the property. Plaintiff testified that she rented the *Page 2 
subject manufactured home in 2005 and 2006. Although she could not be certain, Plaintiff estimated that she rented the home for $600 per month.
The real market value (RMV) of the home was adjudicated by a previous decision of the Magistrate Division at $24,720 for the 2004-05 tax year. Because that number was less than the maximum assessed value (MAV) that year, the assessed value (AV) was set at $24,720. The Assessor trended the tax year 2004-05 RMV of the home for the years under appeal.
The RMV for the 2005-06 tax year is $25,370. The MAV is $30,970. Because the RMV is less than the MAV, the AV was set at the $25,370 RMV number. For the 2006-07 tax year, the assessor increased the RMV to $29,190. The MAV remained unchanged at $30,970, resulting in an AV of $29,190 (based on the RMV, which is slightly less than the MAV).
In her Second Amended and Supplemented Complaint, Plaintiff requested a reduction in RMV to $20,250 for both tax years 2005-06 and 2006-07. (Ptf s 2nd Am Supp'd Compl at 10-11.) At trial, Plaintiff altered her position, explaining that she was requesting values of $12,845 for the 2005-06 tax year, and $9,866 for the 2006-07 tax year. Plaintiff arrives at those figures by subtracting $10,000 from the book value information she obtained over the Internet from a service known as "N.A.D.A."[1]
The pages from the report Plaintiff submitted into evidence bear the title "N.A.D.A. Appraisal Guides," and will hereinafter be referred to by the court as "NADA." The NADA values are $22,845 for the period May-August 2005 (Ptf s Exs 6, 7), and $19,867 for the period May-August 2006 (Ptf s Exs 7, 8).
Plaintiffs theory is that because only the value of the manufactured home is at issue, the question of value focuses on the home itself, notwithstanding the fact that Plaintiff owns the five *Page 3 
acre lot on which the home is situated. Plaintiff insists that, if she sold the home, a buyer would have to move the home off her property. Plaintiff obtained an estimate from McKinley Service (McKinley) stating that "[a]t very least one would have to plan for costs exceeding $10,000.00 to relocate that home within 25 miles." (Ptf's Ex 11.) The McKinley letter does not indicate the nature of the company's expertise, or explain how it arrived at the $10,000 relocation figure. Finally, Plaintiff included a letter from a real estate broker stating that manufactured homes "fail to appreciate in value as site-built structures do, and in fact depreciate at an alarming rate." (Ptf's Ex 10.) Earlier in that letter, the broker states that she "was unable to find any comparable sales of similar structures, with the exception of personal property mobiles set up in Driftwood Mobile Home Park." (Id.) The broker further states that "[i]f the unit were to be removed from the land, it would drop in value to nearly nil." (Id.) (emphasis added).
The Assessor is requesting that the RMVs on the assessment and tax rolls for 2005-06 and 2006-07 be sustained at $25,370 and $29,190, respectively. The Assessor argues that under Oregon law, Plaintiff's manufactured home must be valued as real property because it sits on land owned by Plaintiff. (Def's Ex C at 2.)
In valuing Plaintiff's manufactured home, the Assessor's appraiser Wiley relied on market data to show that the roll values are, in fact, below the actual market value of Plaintiff's manufactured home, if it had been sold on the applicable assessment dates.
Wiley analyzed sales of personal property manufactured homes and found that the average price per square foot for 2005-06 was $27.21, and for 2006-07 was $27.38. (Def's Ex C at 3.) The per foot RMVs of Plaintiff's manufactured home on the assessment and tax rolls was $16.52 for the 2005-06 tax year, and $19.00 per square foot for the 2006-07 tax year. (Id.) Plaintiff's manufactured home is 1,536 square feet. Wiley testified that multiplying the average *Page 4 
per foot values of personal property manufactured homes by the size of Plaintiff s home suggests values for the subject property for the two years of $41,800 and $42,060, respectively. Wiley further testified that the sales of personal property manufactured homes represent the lower end of the range of value because the owner does not own the land and therefore has limited rights.
Wiley also analyzed 87 sales of manufactured homes classified as realproperty (because they are situated on land owned by the owner of the home) and, using the residual value method, found an average residual price per square foot of $45. (Def s Ex C at 3.) Wiley testified that he estimated the value of Plaintiff s home under that approach to be $69,000. He further testified that the value of Plaintiff s home would be even higher under the income approach. Finally, Wiley testified that, contrary to Plaintiffs contention — which is supported by her broker's opinion letter — manufactured homes do not always depreciate in value. In reaching that conclusion, Wiley analyzed the sale and resale of 256 personal property manufactured homes and found that 170 (or 66 percent) resold for a higher price, while only 76 sold for less upon resale (with 10 reselling for about the same price). (Def s Ex C at 3.)
The Assessor further argues location is significant; that manufactured homes with an ocean view sell for twice as much as similar homes without a view, and that moving the home from its current riverfront location in a rural area would reduce its value.
 II. ANALYSIS
The issue in this case is the RMV of Plaintiff s manufactured home for the 2005-06 and 2006-07 tax years, which had statutory assessment dates of January 1, 2005, and January 1, 2006, respectively. ORS 308.007(1)(a), (2).[2] Because this matter was heard under the *Page 5 
provisions of ORS 305.288(1) (2007), the court cannot order a reduction in RMV unless Plaintiff satisfactorily establishes an error in value of at least 20 percent. The 20 percent threshold for the 2005-06 tax year is $20,296. The tax year 2006-07 threshold is $23,352.
Real market value is defined by statute as "the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year." ORS308.205(1).
The burden of proof in an appeal to the tax court is a "preponderance" of the evidence. ORS 305.427 (2007). The Oregon Supreme Court has stated that:
 "`Preponderance' derives from the Latin word `praeponderare,' which translates to "outweigh, be of greater weight.' 8 Oxford English Dictionary 1289 (1933). With regard to the burden of proof or persuasion in civil actions, it is generally accepted to mean the greater weight of evidence."
Riley Hill General Contractor v. Tandy Corp., 303 Or 390, 394, 737 P2d 595
(1987).
This court has previously ruled that "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence."Feves v. Dept. of Revenue, 4 OTR 302, 312 (1971). The burden falls upon the party seeking affirmative relief, which in this case is Plaintiff. ORS 305.427 (2007). If the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet the requisite burden of proof. Reed v.Dept. of Rev., 310 Or 260, 265, 798 P2d 235 (1990).
There are problems with Plaintiff's evidence. Plaintiff's value estimates are based on "book value," and were arrived at by Plaintiff completing an online questionnaire with a company located in Costa Mesa, California, regarding the characteristics of her manufactured home. The NADA report expressly states at the top of the document: "THIS IS NOT AN *Page 6 
APPRAISAL FORM." (Ptf's Exs 6 — 8.) Moreover, the value estimate was rendered without the benefit of an on-site physical inspection of the property by a qualified appraiser, and there is no indication as to the credentials of the individual who rendered the value estimate, or the method used in arriving at a value. NADA is a company that values automobiles. And, although NADA purports to apply a "State Location Adjustment," it does not provide any local adjustment, which would seem to indicate that a NADA value estimate would be the same regardless of where the manufactured structure were located within the entire state of Oregon. (Id.) Location is a foundational principle in the value of any property.
In Melton v. Union County Assessor, TC-MD No 020583B, WL 215040 (2003), the taxpayer appealed the RMV of a manufactured structure based on the property's "Blue Book values.[3] "In addressing the taxpayer's argument, the court stated that "`Blue Book' values are more related to dealer trade allowances. They are not necessarily reflective of independent market activities." Id. at 2. Although Plaintiff in the instant appeal utilized another valuation service, that service apparently also specializes in valuing automobiles, and the value estimates provided do not constitute an appraisal utilizing one of the three accepted approaches to value.
Another major problem with Plaintiff's case is that she assumes any sale of the home would require that the home be moved from the five acre lot that it sits on, and then presents an unsupported estimate of $10,000 for the cost of moving the home. Under ORS 308.875, the assessor is required to value the subject property as real property. That statute provides, in relevant part: "[i]f the manufactured structure and the land upon which the manufactured structure is situated are owned by the same person, the assessor shall assess the manufactured *Page 7 
structure as real property."[4] Plaintiff, by insisting that the home be valued separate from the land, and that the buyer would have to move the home, presents a value estimate of the home as personal property. Thus, there are problems with both Plaintiff's starting value estimate, and her adjustment for moving the home.
Plaintiff insists that the Assessor's value unfairly includes an amount attributable to the home's riverfront location. That argument is an extension of her insistence that any sale of the home would require that the home be removed from the property and relocated elsewhere. InVilhauer v. Lane County Assessor, TC-MD 060238E, WL 2587302 (Sept 8, 2006), the taxpayers appealed the RMV of the manufactured home sitting on a lot they owned on a lake. The county argued that "the home's location on the lake increases its value." Id. at *2. The taxpayers disagreed, arguing that "location has no relevance to a manufactured home." Id. In rejecting the taxpayers' argument, the court sided with the county's position that "with manufactured homes, the location does impact value."Id. at *3. The court inserted the following quotation from Rhodes v.Dept. of Rev., 12 OTR 24, 26 (1991), where the Judge of the Regular Division of the Tax Court observed:
 "Everyone knows identical, mass-produced items, such as shoes or toothbrushes, often sell for different amounts in different stores. Although mobile homes are mass produced and easier to compare than "stick built' houses, there may still be a significant variance in basic price. To that variable must be added moving and set-up expenses with associated landscaping and skirting costs. These all make location of a mobile home a significant factor."
Plaintiff argues she provided third-party evidence and the county used its own data and in-house calculations. Plaintiff misses the point that her "third-party" evidence is unreliable and unpersuasive, whereas Defendant has presented market evidence, which is what the statute *Page 8 
requires. Moreover, the nature of Plaintiff s evidence is so weak that she has not persuaded the court that there is any error in the record assessment, never mind the required 20 percent error that she must demonstrate in order to prevail under ORS 305.288(1) (2007). In other words, Plaintiff has failed to meet her initial burden of proof. Thus, it is unnecessary for the court to evaluate Defendant's evidence.
 III. CONCLUSION
The court concludes that Plaintiff has failed to show any error in the RMV of her manufactured home for the 2005-06 and 2006-07 tax years. Plaintiff clearly has not shown the 20 percent error required by ORS305.288(1) (2007). Accordingly, Plaintiffs appeal is denied. Now, therefore,
IT IS THE DECISION OF THIS COURT that Plaintiff has failed to meet her burden of proof and her value appeal is therefore denied.
Dated this ____ day of October 2009.
If you want to appeal this Decision, file a Complaint in the RegularDivision of the Oregon Tax Court, by mailing to: 1163 State Street,Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 StateStreet, Salem, OR.
 Your Complaint must be submitted within 60 days after the date of theDecision or this Decision becomes final and cannot be changed.
 This document was signed by Magistrate Dan Robinson on October 16,2009. The Court filed and entered this document on October 16, 2009.
[1] On cross examination, Nedeau brought out the fact that NADA is an automobile valuation service.
According to the company's website, NADA stands for National Association of Automobile Dealers. (http://nadaguides.mediaroom.com/index.php?s=40). NADA espouses to be "the most comprehensive vehicle information website on the Internet today."
[2] Unless noted otherwise, all references to the Oregon Revised Statutes (ORS) are to 2003 for the 2005-06 tax year, and 2005 for the 2006-07 tax year.
[3] A Blue Book value is a popular value estimation service typically used for investigating the value of an automobile.
[4] In contrast, "[i]f the manufactured structure is owned separately and apart from the land upon which it is located, the assessor shall assess and tax the manufactured structure as personal property." ORS308.875 (emphasis added). *Page 1